IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### No. 20-5052

◆◆

In re RPM INTERNATIONAL INC.,

*Petitioner.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

## PETITION FOR WRIT OF MANDAMUS

SHARON L. NELLES
STEPHEN EHRENBERG
WILLIAM H. WAGENER
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

JUDSON O. LITTLETON
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC 20006-5215
(202) 956-7500

MITCHELL G. BLAIR
FRITZ E. BERCKMUELLER
DAVID T. BULES
CALFEE, HALTER & GRISWOLD LLP
1405 East Sixth Street
Cleveland, Ohio 44114
(216) 622-8671

*Attorneys for Petitioner*

## CERTIFICATE AS TO PARTIES

The party that appears in the District Court as Plaintiff is the Securities and Exchange Commission. The parties that appear in the District Court as defendants are RPM International Inc. and Edward W. Moore.

The party that appears before this Court as Petitioner is RPM International Inc. The parties that appear before this Court as Respondents are the Securities and Exchange Commission and Edward W. Moore.

There are currently no *amici* and no intervenors in either the District Court proceeding or in this proceeding.[1]

---

[1] RPM International Inc. expects that one or more parties will file a motion for leave to file an *amicus* brief in support of the instant Petition for a Writ of Mandamus.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Petitioner RPM International Inc. states that it does not have a parent corporation and, to the best of RPM International Inc.'s knowledge, no publicly held company owns 10 percent or more of the common stock of RPM International Inc.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

RELIEF SOUGHT ........................................................................................................... 4

ISSUES PRESENTED ....................................................................................................... 4

STATEMENT OF FACTS ................................................................................................. 5

    A.    The GSA Matter. ............................................................................ 5

    B.    The SEC Investigation. ................................................................. 6

    C.    The Audit Committee Investigation. ........................................... 6

    D.    The Audit Committee Investigation Concludes and RPM
          Restates. ....................................................................................... 8

    E.    Jones Day Prepares 19 Interview Memoranda. ........................... 8

    F.    E&Y Produces Documents to the SEC. ...................................... 9

    G.    The Instant Litigation. ................................................................ 10

    H.    The Discovery Dispute Over the Jones Day Memoranda. ....................... 11

    I.    The District Court Orders Disclosure of the Jones Day
         Memoranda. ................................................................................ 12

REASONS WHY THE WRIT SHOULD ISSUE ....................................................... 15

  I.    Standard of Review. ........................................................................... 15

  II.    The District Court's Order Compelling Disclosure of the Jones Day
       Memoranda Constitutes Legal Error. ................................................. 16

    A.    The District Court Erred When It Held That the Jones Day
         Memoranda Are Not Work Product. .......................................... 16

    B.    The District Court Erred When It Held That Work Product
         Protection Over the Jones Day Memoranda Was Waived. ..................... 20

    C.    The District Court Erred When It Held That Attorney-Client
         Privilege Was Waived as to the Jones Day Memoranda. .......................... 22

    D.    The Court Erred When It Ordered Blanket Disclosure of the
         Jones Day Memoranda Without Analyzing the Proper Scope of
         the Waiver. ................................................................................... 24

  III.  The District Court's Erroneous Ruling Justifies Mandamus. ............................. 26

    A.    RPM Has No Other Adequate Means of Redress. ................................... 27

    B.    RPM's Right to Issuance of the Writ is Clear and Indisputable. ............. 28

    C.    The Writ is Appropriate Under the Circumstances. ................................ 29

CONCLUSION ............................................................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowne of New York City, Inc.* v. *AmBase Corp.*,
150 F.R.D. 465 (S.D.N.Y. 1993) ............................................................. 21

*In re Cardinal Health, Inc., Sec. Litig.*,
2007 WL 495150 (S.D.N.Y. Jan. 26, 2007) ................................... 17

*Cheney* v. *U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004) ............................................................ 27, 28, 29

*Equal Rights Ctr.* v. *Post Props., Inc.*,
247 F.R.D. 208 (D.D.C. 2008) ........................................................ 17

*Frieman* v. *USAir Grp. Inc.*,
1994 WL 675221 (E.D. Pa. Nov. 23, 1994) ............................... 21

*In re Grand Jury Subpoena*,
273 F. Supp. 3d 296 (D. Mass. 2017) ........................................ 23

*Hertzberg* v. *Veneman*,
273 F. Supp. 2d 67 (D.D.C. 2003) ........................................... 17

*Hickman* v. *Taylor*,
329 U.S. 495, 499–500 (1947) ................................................ 2, 3

* *In re Kellogg Brown & Root, Inc.*,
756 F.3d 754 (D.C. Cir. 2014) .............. 3, 4, 15, 26, 27, 28, 29, 30, 31

* *In re Kellogg Brown & Root, Inc.*,
796 F.3d 137 (D.C. Cir. 2015) ...................................... 3, 28, 30

*Lawrence E. Jaffe Pension Plan* v. *Household Int'l Inc.*,
244 F.R.D. 412 (N.D. Ill. 2006) .......................................... 17, 23

*In re LTV Sec. Litig.*,
89 F.R.D. 595 (N.D. Tex. 1981) ............................................. 17

*Mohawk Indus., Inc.* v. *Carpenter*,
558 U.S. 100 (2009) ......................................................... 3, 15

* Authorities upon which we chiefly rely are marked with asterisks.

\* *Nat'l Ass'n of Crim. Def. Lawyers* v. *Dept. of Justice Exec. Office for U.S. Attorneys*,
844 F.3d 246 (D.C. Cir. 2016) ............................................... 16, 17, 18, 19

*Resolution Tr. Corp.* v. *Mass. Mut. Life Ins. Co.*,
200 F.R.D. 183 (W.D.N.Y. 2001) ............................................... 24

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) (en banc) ............................................... 30

*In re Sealed Case*,
146 F.3d 881 (D.C. Cir. 1998) ............................................... 17

*In re Sealed Case*,
151 F.3d 1059 (D.C. Cir. 1998) ............................................... 28

*In re Sims*,
534 F.3d 117 (2d Cir. 2008) ............................................... 27

*In re Suprema Specialties, Inc.*,
2007 WL 1964852 (Bankr. S.D.N.Y. July 2, 2007) ............................................... 16

\* *Trs. of Elec. Workers Local No. 26 Pension Tr. Fund* v. *Tr. Fund Advisors, Inc.*,
266 F.R.D. 1 (D.D.C. 2010) ............................................... 21, 23, 24, 25

*U.S. Airline Pilots Ass'n* v. *Pension Ben. Guar. Corp.*,
274 F.R.D. 28 (D.D.C. 2011) ............................................... 24, 25

*In re United Mine Workers of Am. Emp. Benefits Plan Litig.*,
159 F.R.D. 307 (D.D.C. 1994) ............................................... 25, 26

\* *United States* v. *Deloitte LLP*,
610 F.3d 129 (D.C. Cir. 2010) ............................................... 13, 16, 18, 19, 20, 21, 22, 29

*United States* v. *Exxon Corp.*,
87 F.R.D. 624 (D.D.C. 1980) ............................................... 21

\* *Upjohn Co.* v. *United States*,
449 U.S. 383 (1981) ............................................... 3, 14, 23

**Statutes**

28 U.S.C. § 1651(a) ............................................... 15

## Other Authorities

8 Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure § 2024 (3d ed. 2019) ..................................................................... 22

Federal Rule of Evidence 502 ............................................................................. 24

Michael E. Wolfson, *Opinion Work Product—Solving the Dilemma of
Compelled Disclosure*, 64 Neb. L. Rev. 248 (1985)..................................... 21

## INTRODUCTION

This Court has twice granted mandamus petitions vacating district court orders compelling disclosure of documents generated during an internal investigation based on the attorney-client privilege and the work product doctrine. This case calls for a third. Petitioner RPM International Inc. ("RPM") seeks mandamus relief from a District Court order (Berman Jackson, J.) compelling blanket disclosure of 19 interview memoranda prepared by the law firm Jones Day (the "Jones Day Memoranda") following its internal investigation on behalf of RPM's Audit Committee (the "Audit Committee Investigation"), in anticipation of potential litigation with the Securities and Exchange Commission ("SEC").

Jones Day was hired shortly after the SEC initiated a formal investigation of an RPM accounting accrual and RPM's outside auditor, Ernst & Young ("E&Y"), demanded that RPM's Audit Committee also conduct its own investigation. Jones Day reviewed RPM documents and interviewed 23 witnesses, including RPM executives and counsel. Because RPM's accrual involved a prior investigation and lawsuit, Jones Day explored, *inter alia*, historical privileged communications involving in-house and outside counsel familiar with that matter.

Jones Day told RPM's auditor that it lacked authorization to waive RPM's privilege or work product and was not doing so. But as is standard practice, Jones Day gave RPM's auditor an oral summary of a subset of non-privileged facts uncovered by the investigation, which the auditor memorialized in its own written notes. RPM

restated the timing of its accrual, and its auditor signed RPM's Form 10-K. Weeks later, Jones Day prepared formal interview memoranda. Jones Day never shared these memoranda with anyone, including RPM.

In a sweeping disclosure order, the District Court held: (1) the Jones Day Memoranda are not work product because they were not prepared in anticipation of litigation; (2) even if the Jones Day Memoranda were work product, work product protection was waived by the auditors' production to the SEC of its notes summarizing conversations with Jones Day; and (3) although the attorney-client privilege indisputably protected 16 of 19 Jones Day Memoranda, the privilege over those memoranda was waived when Jones Day disclosed a subset of the facts it had learned to RPM's auditor. (*See* February 12, 2020 Conference Transcript, attached as Appendix H, at 8–11, 13; Order dated February 12, 2020, attached as Appendix I (together, the "February 12 Order").) The District Court refused to stay enforcement of its production order or to certify it for interlocutory review. (*See* Order dated March 5, 2020, attached as Appendix L.)

The District Court was wrong. The Jones Day Memoranda are textbook attorney work product that summarize privileged communications between Audit Committee counsel and RPM's executives and attorneys. Indeed, the seminal decision in which the Supreme Court first established the work product doctrine, *Hickman* v. *Taylor*, held that similar attorney interview memoranda were protected from disclosure because they reflected "privileged matter obtained in preparation for litigation" that if produced

would reveal "the thoughts of counsel." 329 U.S. 495, 499–500, 509–10 (1947). The Supreme Court has also held that the attorney-client privilege protects confidential communications between a company's employees and its counsel conducting an internal investigation, admonishing that government attorneys cannot "secure the results of [company counsel's] internal investigation." *Upjohn Co.* v. *United States*, 449 U.S. 383, 395–96 (1981). Today, the Supreme Court authorizes "litigants confronted with a particularly injurious or novel privilege ruling" to obtain immediate appellate review by: (i) seeking certification of an interlocutory appeal; (ii) petitioning the court of appeals for a writ of mandamus; or (iii) defying the disclosure order to incur appealable criminal sanctions. *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 110–11 (2009). By this Petition, RPM seeks mandamus to prevent the irreversible consequences of the District Court's erroneous ruling stripping the Jones Day Memoranda of both work product protections and attorney-client privilege.

In its recent *KBR* decisions, this Court vacated district court orders compelling disclosure of documents generated during an internal investigation, reasoning that mandamus was appropriate because the petitioners had "no other adequate means" to obtain relief after the district court refused to certify its orders for interlocutory appeal under 28 U.S.C. § 1292(b), and post-judgment review would only come after the documents had been disclosed. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Kavanaugh, J.) ("*KBR I*"); *see also In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 150 (D.C. Cir. 2015) ("*KBR II*"). Similarly, the District Court's decision "would

disable *most public companies* from undertaking confidential internal investigations," because its approach would "work a sea change" in the rules governing such investigations. *KBR I*, 756 F.3d at 762. It would eviscerate the protections afforded to corporate counsel to "gather facts and ensure compliance with the law after being informed of potential misconduct." *Id.* at 757. And, holding that a lawyer's disclosure of non-privileged facts waives all protection over the lawyer's interview memoranda— even those not yet drafted—would deter companies from investigating and making disclosures to auditors, regulators, and the public. Because the District Court's rulings "constituted legal error" of "the kind that justifies mandamus," the Court should grant mandamus and vacate the February 12 Order. *Id.* at 756–57.

## RELIEF SOUGHT

RPM respectfully requests a writ of mandamus vacating the District Court's February 12 Order compelling disclosure of all of the Jones Day Memoranda.

## ISSUES PRESENTED

(1)     Whether the District Court erred in holding that the work product doctrine does not protect a lawyer's interview memoranda concerning an investigation into a company's accounting requested by the client's outside auditor on the grounds that they were not prepared "because of" potential litigation, where the lawyer reasonably foresaw potential litigation arising from a pending SEC investigation.

(2)     Whether a lawyer's verbal summary to the client's outside auditor of a subset of non-privileged facts learned during an internal investigation, which the auditor

4

incorporated into its own memoranda later produced in litigation, waives work product protection over all of the law firm's interview memoranda, even if such memoranda were prepared after the discussion with the auditor and were not shared with anyone outside the law firm.

(3)     Whether a lawyer's verbal summary to the client's outside auditor of a subset of non-privileged facts learned during an internal investigation waives attorney-client privilege over all of the law firm's interview memoranda, even if such memoranda were prepared after the discussion with the auditor and were not shared with anyone outside the law firm.

(4)     Whether the District Court erred in ordering blanket disclosure of privileged documents on the basis that attorney-client privilege and work product protection were waived without analyzing the proper scope of the waiver pursuant to Federal Rule of Evidence 502.

## STATEMENT OF FACTS

### A.     The GSA Matter.

In 2011, the General Services Administration ("GSA") sent a subpoena to RPM seeking documents about historical procurement contracts between the federal government and an RPM subsidiary.  (Dkt. 1, Complaint ¶ 18.)[2]  In August 2012, the

---

[2]     Citations to "Dkt." refer to entries on the docket of *SEC* v. *RPM Int'l Inc.*, No. 16-cv-01803-ABJ (D.D.C. Sept. 9, 2016).

U.S. Department of Justice ("DOJ") provided RPM's counsel, Mayer Brown, with a copy of a related *qui tam* complaint, which was under seal. (*Id.* ¶ 28.) Although the GSA and DOJ expressed no view on whether RPM owed the government money, Mayer Brown began suggesting ways to interpret the old contracts and began drafting a possible settlement offer. (*Id.* ¶¶ 30–35, 46–53.)

During its fiscal third quarter, on January 11, 2013, RPM submitted a settlement offer to the DOJ and GSA, which the government countered on March 28, 2013. (*Id.* ¶¶ 62, 64.) RPM promptly recorded a $68.8 million accrual and publicly disclosed the GSA investigation in its April 4, 2013 third-quarter earnings release. (*Id.* ¶ 64.) RPM's outside auditor, E&Y, did not question the propriety or timing of RPM's disclosure and accrual, and signed RPM's 2013 Form 10-K in July 2013.

## B. The SEC Investigation.

On January 27, 2014, the SEC's Division of Enforcement informed RPM that it had commenced an inquiry into the timing of RPM's disclosure and accrual. (Declaration of William H. Wagener, attached as Sealed Appendix D, Ex. A.) On June 19, 2014, the SEC escalated its inquiry to a formal investigation. (Appendix D, Ex. G.)

## C. The Audit Committee Investigation.

During its July 21, 2014 meeting, RPM's Audit Committee discussed with E&Y the SEC's formal investigation. (Sealed Appendix D, Ex. I at RPM2_005043.) E&Y's lead auditor stated that E&Y was "not going to sign [RPM's] [10-]K in the absence of a special investigation." (Appendix D, Ex. J at 165–66.) Faced with questions from its

auditor about the subject matter of the formal SEC investigation, the Audit Committee "determined to retain Jones Day to conduct an independent investigation into the timing of the disclosure and accruals in question" and to delay filing RPM's Form 10-K. (Sealed Appendix D, Ex. I at RPM2_005044.)

The Audit Committee Investigation was led by Jones Day partner Stephen G. Sozio, Head of Litigation for Jones Day's Cleveland office. (Declaration of Stephen G. Sozio, attached as Appendix E ¶¶ 1, 3.) From July 30 to August 9, 2014, Jones Day conducted 19 interviews of 23 witnesses, which included: (a) current or former RPM executives and employees (including in-house attorneys); (b) RPM's outside counsel; (c) counsel for underwriters of an RPM bond offering; and (d) E&Y auditors. (Appendix D, Exs. K, L; Appendix E ¶ 3 & Ex. A.)

Jones Day advised RPM personnel that the interviews were privileged and confidential, and were being conducted to assist Jones Day provide legal advice to RPM's Audit Committee. (Appendix E ¶ 4.) In questioning RPM's in-house and outside counsel, Jones Day explored historical privileged communications, including "privileged communications between RPM and its inside and outside counsel with non-lawyer employees of RPM." (*Id.* ¶ 6.)

At the direction of the Audit Committee, Jones Day advised E&Y of "the progress of the investigation," and orally conveyed "certain facts obtained in witness interviews," but not remotely all of the content of the interviews later set forth in the Jones Day Memoranda—which did not exist at the time of these oral briefings.

7

(Appendix E ¶¶ 7, 9.) Jones Day did not disclose to E&Y "any information or documents subject to the attorney-client privilege or the attorney's work product doctrine." (*Id.* ¶ 7.) Mr. Sozio told E&Y that he did not have RPM's authorization to "disclose attorney-client privileged or attorney's work product information or documents," or to waive RPM's privilege, and he did not do so. (*Id.*)

### D. The Audit Committee Investigation Concludes and RPM Restates.

On August 12, 2014, at the request of the Audit Committee, Mr. Sozio briefed RPM's full Board, which voted to restate RPM's financials to record portions of the third-quarter accrual in the first and second quarters of 2013. (Appendix D, Ex. N.) On August 14, 2014, RPM issued a Form 8-K announcing the restatement. (Declaration of Timothy K. Halloran, attached as Appendix B, Ex. 1.) RPM filed its audited 2014 Form 10-K that same day.

### E. Jones Day Prepares 19 Interview Memoranda.

On August 19, 2014, SEC Enforcement counsel asked Mr. Sozio for an "oral briefing to us about the investigation's findings," agreeing that such briefing would not waive attorney-client privilege or work product. (Appendix E, Ex. B.) Mr. Sozio gave the SEC a one-hour factual briefing on August 21, 2014, again without disclosing privileged information or work product. (*Id.* ¶ 8.)

From August 21, 2014—the day Mr. Sozio briefed the SEC—through September 11, 2014, Jones Day prepared draft memoranda to file summarizing its 19 interviews. (Appendix E ¶¶ 4, 9 & Ex. A.) Given this timing, "it was, therefore, not

possible for Jones Day to have shared any of the draft interview memoranda" with

E&Y during the earlier Audit Committee Investigation briefings.  (*Id.* ¶ 9.)

Mr. Sozio attests that "litigation or other enforcement proceedings by the SEC

(as well as other potential legal actions) were reasonably foreseeable" from the moment

he was hired.  (*Id.* ¶¶ 3, 4, 9.)   His Declaration establishes that every Jones Day

Memorandum constitutes attorney work product and that most memorialize attorney-

client privileged communications:

> The interview memoranda expressly state that each interviewee affiliated
> with RPM or [its subsidiary] was advised that Jones Day represented the
> Audit Committee, that the communications in the interview are privileged
> and the privilege belongs to RPM's Board of Directors, and that the Audit
> Committee could direct Jones Day to disclose information from the
> interview to others.  As reflected in each draft interview memorandum,
> they are not verbatim transcripts of the interviews.  The draft memoranda
> are summaries and contain information that the lawyer creating the
> documents believed to be significant as well as the mental impressions of
> the lawyer conducting the interview.   Each of the draft interview
> memoranda constitutes attorney's work product of Jones Day, because, at
> least by July 2014, litigation or other enforcement proceedings by the SEC
> (as well as other potential legal actions) were reasonably foreseeable.

(*Id.* ¶ 4.)   The Jones Day Memoranda are designated "PRIVILEGED AND

CONFIDENTIAL" and "ATTORNEY WORK PRODUCT."  (Appendix B, Ex. 4.)

## F.     E&Y Produces Documents to the SEC.

On January 27, 2014, the SEC issued a document request to E&Y.  (Appendix D,

Ex. A.)  Prior to production, RPM counsel reviewed E&Y's proposed production for

potential privilege.  Because Jones Day had not been authorized to disclose (and did

not disclose) privileged communications or work product to E&Y (Appendix E ¶ 7),

RPM's counsel identified for redaction only attorney work product that related to RPM's counsel's analysis of the underlying GSA investigation. RPM's counsel did not redact references to Jones Day's investigation, because E&Y's notes and memoranda otherwise reflected non-privileged facts or E&Y's own summary interpretation of the summary of facts conveyed by Jones Day.

On October 8, 2014, E&Y produced documents to the SEC, including a memo to file dated August 13, 2014. (Appendix B, Ex. 8.) That memo was prepared by E&Y employee Mark Carlson, to whom Mr. Sozio had verbally conveyed non-privileged facts. Mr. Carlson described his memo as "summarizing the assessment of the audit committee investigation." (Appendix B, Ex. 5 at 99:14–15.). After interviewing Mr. Carlson in April 2016, the SEC did not claim Jones Day had disclosed privileged communications or work product to E&Y, or that E&Y's document production effected any waiver of RPM's privileges.

### G. The Instant Litigation.

The SEC filed its Complaint on September 9, 2016, citing RPM's restatement to allege that RPM negligently violated the federal securities laws by not recording its accrual before the third quarter of fiscal 2013. The Complaint quotes some of the same snippets of Mr. Carlson's notes that the SEC now claims effected a waiver, but even then the SEC did not claim waiver. (Dkt. 1 ¶ 80.) In January 2018, the SEC requested from RPM, "All documents relating to the investigation conducted by RPM's Audit Committee in 2014 . . . including . . . interview notes and interview memoranda."

(Appendix D, Ex. P.)  RPM promptly objected to this request because, *inter alia*, it "calls for information protected by the attorney-client privilege or work product doctrine" and "seeks documents . . . not in RPM's possession, custody, or control" (Appendix D, Ex. Q).  From September 24, 2018 to June 3, 2019, the parties deposed 14 fact witnesses.  (*See* Appendix D, Ex. L.)  The SEC did not depose 16 of 23 interviewees covered in the Jones Day Memoranda to build its own record.[3]  (*Id.*)

## H.    The Discovery Dispute Over the Jones Day Memoranda.

On February 4, 2019, the SEC for the first time raised a dispute regarding the discoverability of the Jones Day Memoranda.  RPM's counsel indicated that RPM did not have possession, custody or control over (and had never even seen) the Jones Day Memoranda.  On May 16, 2019, the District Court found that RPM had "control" of the memoranda for purposes of discovery.  (Dkt. 69 at 13.)

On May 31, 2019, Jones Day provided the Jones Day Memoranda to RPM's counsel for the first time, pursuant to a District Court order.  (*See* Appendix E ¶ 10.) Jones Day also provided a privilege log.  (Appendix D, Ex. T; Appendix E ¶ 10.)

---

[3]    The SEC also conducted pre-litigation interviews of an additional three people interviewed by Jones Day.

## I. The District Court Orders Disclosure of the Jones Day Memoranda.

On July 3, 2019, the SEC moved to compel production of the Jones Day Memoranda. (Motion to Compel, attached as Appendix A.)[4] On February 12, 2020, the District Court granted the SEC's motion and ordered blanket disclosure of all 19 Jones Day Memoranda, holding that: (1) the Jones Day Memoranda are not attorney work product because they were not prepared in anticipation of litigation; (2) even if the Jones Day Memoranda constituted work product, work product protection was waived by production of Mr. Carlson's memorandum to the SEC; and (3) although 16 of the 19 Jones Day Memoranda were protected from disclosure by the attorney-client privilege because they reflect communications between Jones Day and RPM employees or counsel, the privilege was waived solely because Jones Day disclosed facts uncovered in its investigation to E&Y. (*See* Appendix H at 8–13; Appendix I.) The February 12 Order contains four clear legal errors.

*First*, the District Court erroneously held that the Jones Day Memoranda are not work product. The District Court incorrectly reasoned that a lawyer's work in connection with an internal investigation *cannot* be work product unless that same lawyer is hired to defend subsequent litigation. (Appendix H at 10 (Jones Day "aren't the litigators anyway").) The District Court compounded this error by focusing exclusively

---

[4] The District Court directed RPM to submit the Jones Day Memoranda for *in camera* review. (Minute Order dated Oct. 8, 2019.) RPM has submitted the Memoranda to this Court *in camera* as well.

on the Audit Committee's initial motivation for hiring Jones Day, while disregarding that the issues were raised because of and were the subject of a pending SEC investigation. (*Id.* at 8–10 ("Jones Day was hired for a different specific purpose" than "anticipation of litigation," specifically, "to determine whether RPM needed to restate its financials.").) Regardless of the motives for commencing Jones Day's investigation, Jones Day later created its Memoranda after the restatement in reasonable anticipation of securities *litigation*, and are plainly work product. *Cf. United States* v. *Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) (explaining that "material developed in anticipation of litigation can be incorporated into a document produced during an audit without ceasing to be work product" and "a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation").[5]

*Second*, the District Court erroneously held that any work product protection was waived when "RPM permitted" the "contents of various memoranda" to be summarized by E&Y and re-produced to the SEC. (Appendix H at 10–11.) Yet, work product protects documents, *i.e.*, a particular formulation of the lawyer's thoughts and

---

[5]     The District Court's March 5, 2020 Order held that "[t]he interview memoranda were prepared in conjunction with an internal investigation that was conducted by outside counsel not in anticipation of litigation, but at the request of the company's auditors." (Appendix L at 4.) This view reflects a "more demanding" work product test than the "because of" test applied in this Circuit. *See Deloitte*, 610 F.3d at 138 (rejecting "primary motivating purpose" test).

analyses, not the communications or facts which are the subject of those thoughts and analyses. The particular formulation at issue here, the Jones Day Memoranda, were never shared with E&Y (indeed, they did not exist when E&Y was briefed). (Appendix E ¶¶ 7, 9.) Work product protection cannot be waived as to a particular document by disclosing facts that happen to be discussed or analyzed in the work product document.

*Third*, despite acknowledging that the attorney-client privilege applied to 16 of the 19 Jones Day Memoranda, the Court erred by holding that this privilege was waived when "RPM disclosed the contents of the interview memoranda to Ernst & Young" during the Audit Committee Investigation. (Appendix H at 16.) But facts and attorney-client privileged communications about those facts are "entirely different thing[s]." *Upjohn*, 449 U.S. at 395–96. The record shows that Jones Day disclosed non-privileged facts—not privileged communications—to E&Y. (Appendix E ¶ 7.)

*Finally*, the District Court ordered blanket production of all 19 Jones Day Memoranda, in their entireties, without engaging in the required fairness analysis to determine the proper scope of any waiver under Federal Rule of Evidence 502. The District Court's waiver holdings are based on a subset of non-privileged facts in E&Y's memoranda and notes, attributed to statements by only four of the 23 interviewees. (Appendix H at 14–15.) The District Court did not mention Mr. Sozio's uncontroverted declaration that he only summarized for E&Y a *subset* of non-privileged facts discussed in the later-created Jones Day Memoranda, and did not share his mental impressions or otherwise disclose attorney work product. (Appendix E ¶ 7.)

RPM promptly asked the District Court to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b), and to stay the Order pending interlocutory appeal or a petition for a writ of mandamus.  (Motion to Certify Interlocutory Appeal and for Stay, attached as Appendix J.)  On March 5, 2020, the District Court denied RPM's motion and ordered RPM to produce the Jones Day Memoranda by March 19, 2020.  (Appendix L.)  RPM has sought an emergency stay of this production order.

## REASONS WHY THE WRIT SHOULD ISSUE

## I.      STANDARD OF REVIEW.

When a district court orders disclosure of privileged materials, a party may seek a writ of mandamus if the disclosure order amounts to a "judicial usurpation of power," a "clear abuse of discretion," or "otherwise works a manifest injustice."  *Mohawk*, 558 U.S. at 111.  In deciding whether to grant a petition for a writ of mandamus, the threshold question for this Court is whether the district court's ruling "constituted legal error."  *KBR I*, 756 F.3d at 756.  If the district court's ruling was legally erroneous, "the remaining question is whether that error is the kind that justifies mandamus."  *Id.* at 756–57 (citing *Cheney* v. *U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004)); *see also* 28 U.S.C. § 1651(a).  The District Court's rulings satisfy both tests.

## II.    THE DISTRICT COURT'S ORDER COMPELLING DISCLOSURE OF THE JONES DAY MEMORANDA CONSTITUTES LEGAL ERROR.

### A.    The District Court Erred When It Held That the Jones Day Memoranda Are Not Work Product.

The work product doctrine recognizes that an attorney must be able to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Deloitte*, 610 F.3d at 134 (citing *Hickman*, 329 U.S. at 511). Thus, "an attorney's notes recording his interviews with witnesses to the litigation-prompting incident [are] protected from discovery." *Id.* (citing *Hickman*, 329 U.S. at 509–10). Here, the prospect of litigation arising from the SEC's formal investigation was one reason the Jones Day Memoranda were prepared. That alone is sufficient for work product protection. *Nat'l Ass'n of Crim. Def. Lawyers v. Dept. of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 255-56 (D.C. Cir. 2016) ("*NACDL*"). In denying RPM's work product claim, the District Court applied the wrong test and clearly erred.

To determine whether material is work product, courts in this Circuit apply the "because of" test, asking "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 137 (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)). To satisfy this standard, "the attorney who created the document must have 'had a subjective belief that litigation was a real

possibility,' and that subjective belief must have been 'objectively reasonable.'" *NACDL*, 844 F.3d at 251 (quoting *In re Sealed Case*, 146 F.3d at 884).

Litigation "need not be imminent or certain"; it need only be "fairly foreseeable at the time the materials were prepared." *Equal Rights Ctr.* v. *Post Props., Inc.*, 247 F.R.D. 208, 210 (D.D.C. 2008) (internal quotations omitted). While "some articulable claim, likely to lead to litigation, must have arisen," *id.*, the work product doctrine "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is [yet] contemplated," *Hertzberg* v. *Veneman*, 273 F. Supp. 2d 67, 78–79 (D.D.C. 2003) (internal quotation omitted). "It is often prior to the emergence of specific claims that lawyers are best equipped either to help clients avoid litigation or to strengthen available defenses should litigation occur." *In re Sealed Case*, 146 F.3d at 886. The Jones Day Memoranda easily qualify as attorney work product. Courts routinely hold that witness memoranda and other internal investigation materials are protected work product where, as here, they were prepared when a company is under SEC investigation.[6]

---

[6] *See, e.g., In re Cardinal Health, Inc., Sec. Litig.*, 2007 WL 495150, at *4–5 (S.D.N.Y. Jan. 26, 2007) (investigation materials prepared "in anticipation of litigation" where company had "knowledge of the SEC's investigation"); *Lawrence E. Jaffe Pension Plan* v. *Household Int'l Inc.*, 244 F.R.D. 412, 428 (N.D. Ill. 2006) (same); *In re LTV Sec. Litig.*, 89 F.R.D. 595, 612 (N.D. Tex. 1981) (same); *In re Suprema Specialties, Inc.*, 2007 WL 1964852, at *4 (Bankr. S.D.N.Y. July 2, 2007) (same).

The District Court held that the Jones Day Memoranda are not work product because "Jones Day was hired to investigate the timing of the disclosures and accruals in question to determine whether RPM needed to restate its financials." (Appendix H at 10.) This ruling is erroneous for at least three reasons.

*First*, the District Court's focus on the fact that Jones Day was retained following a demand from RPM's auditors to investigate the GSA accrual is misplaced. The request from RPM's auditors came only *because of* the already pending SEC investigation into that accrual, and thus the genesis of the Jones Day investigation was the ongoing regulatory matter that became this very litigation. Moreover, documents prepared for multiple purposes—one of which is anticipation of litigation—are work product. *NACDL*, 844 F.3d at 255–56. Indeed, "a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation." *Deloitte*, 610 F.3d at 138. "[M]aterial prepared in anticipation of litigation may also be used for ordinary business purposes without losing its protected status" as work product. *Id.* That includes documents that relate *both* to a potential litigation *and* to a pending audit, such as where an auditor "compelled" the creation of documents as a condition of "an unqualified audit opinion." *Id.* at 133 (auditor's summary of meeting with company counsel could be work product).

*Second*, under the "because of" standard applicable in this Circuit, the Jones Day Memoranda are work product. Mr. Sozio, the lead Jones Day partner "conducting and

overseeing the internal investigation," attested that Jones Day attorneys created summaries of information from the interviews (not verbatim transcripts), sifted the information they "believed to be significant," and set forth their mental impressions concerning that significant information in the Jones Day Memoranda. (*See* Appendix E ¶ 4); *Deloitte*, 610 F.3d at 134. He also attested to his belief that "litigation or other enforcement proceedings by the SEC (as well as other potential legal actions) were reasonably foreseeable" from the moment he was hired. (*Id.* ¶¶ 3, 4, 9.) The existence of the SEC's formal investigation, and the fact that the SEC eventually sued RPM, confirm that Mr. Sozio's belief was objectively reasonable.

*Third*, the District Court incorrectly focused on the reason for Jones Day's *engagement* by RPM's Audit Committee: "[T]he notion of the 'because of' factor, *why the investigation was undertaken*, the notion that it was in anticipation of litigation is not consistent with the written record, which clearly shows that Jones Day was *hired for a different specific purpose*." (Appendix I at 8) (emphasis added). That is contrary to *NACDL*, which examines the state of mind of the "*attorney* who created the document" at issue, not the client. 844 F.3d at 251 (emphasis added). The only logical reason for Jones Day to create interview memoranda after RPM had restated, after E&Y had signed RPM's 2014 10-K, and after the SEC had requested a factual briefing, was to memorialize the information obtained during those interviews in anticipation of potential securities litigation. (*See* Appendix E ¶¶ 4, 9.)

Although purporting to apply the "because of" test, the District Court effectively applied the "primary motivating purpose" test, "which is more demanding than the 'because of' test" employed by this Court. *Deloitte LLP*, 610 F.3d at 138. The District Court held that the Jones Day Memoranda were not work product because they "were prepared in conjunction with an internal investigation that was conducted by outside counsel not in anticipation of litigation, but at the request of the company's auditors, so they could gain confidence in issuing the company's 10-K statement." (Appendix L at 4.) The District Court's reasoning is indistinguishable from the reasoning the government advocated and this Court rejected in *Deloitte*—that "when a document is created as part of an independent audit . . . its sole function is to facilitate that audit, which means it was not prepared in anticipation of litigation." *Deloitte*, 610 F.3d at 138. "Under the more lenient 'because of' test, material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status." *Id.* As a result, "a document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation." *Id.* That is the case here.

**B. The District Court Erred When It Held That Work Product Protection Over the Jones Day Memoranda Was Waived.**

The District Court found erroneously that work product protection over the Jones Day Memoranda was waived when "RPM permitted" the "contents of various memoranda" to be produced by E&Y to the SEC. (Appendix H at 10–11; *see also*

Appendix L at 1.)  According to the District Court, work product protection was waived because Jones Day verbally disclosed the contents of the Jones Day Memoranda to E&Y, which E&Y summarized in its own memoranda that it eventually produced to the SEC.  (*Id.* at 1, 4.)  But work product protects documents, not communications or non-privileged facts later memorialized in a non-privileged document.  *Deloitte*, 610 F.3d at 134.  And it was impossible for Jones Day to have disclosed the actual work product—the contents of the Jones Day Memoranda themselves—to E&Y, because the Memoranda did not exist when Jones Day briefed E&Y.  (*See* Appendix E ¶ 9.)

It is axiomatic that disclosure of the *work product itself* is an "absolute precondition" for waiver of work product protection.  *Trs. of Elec. Workers Local No. 26 Pension Tr. Fund* v. *Tr. Fund Advisors, Inc.,* 266 F.R.D. 1, 16 (D.D.C. 2010) ("*Local No. 26*").  But facts and the identities of knowledgeable witnesses are not work product, and the disclosures to E&Y thus revealed no work product.  *See, e.g., United States* v. *Exxon Corp.*, 87 F.R.D. 624, 638 (D.D.C. 1980) (work product provides no "shield against discovery . . . of the facts that the opponent has acquired, or the persons from whom he obtained the facts") (citation omitted); *Frieman* v. *USAir Grp. Inc.*, 1994 WL 675221, at *2 (E.D. Pa. Nov. 23, 1994) ("facts gained through a party's investigative efforts" are discoverable); *Bowne of New York City, Inc.* v. *AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (work product protects documents, but not "the underlying facts

known to the party or his counsel").[7]  Facts are all Mr. Sozio provided to E&Y.  The work product itself—*i.e.*, the Memoranda—were never and could never have been disclosed to E&Y because they did not exist at the time of Jones Day's briefing of E&Y. (*See* Appendix E ¶ 9.)

Moreover, this Court has held that a client does not necessarily waive work product protection when it discloses pre-existing work product to its auditor.  *Deloitte*, 610 F.3d at 139.  If disclosure of *pre-existing* work product to an auditor does not waive work product protection, it is hard to imagine how an attorney's discussion of facts could waive work product protection over documents *before* they are prepared.  And, E&Y's production to the SEC of *its own* memo—containing E&Y's gloss on Mr. Sozio's summary of facts—cannot waive work product over the Jones Day Memoranda.

### C.     The District Court Erred When It Held That Attorney-Client Privilege Was Waived as to the Jones Day Memoranda.

Although the attorney-client privilege indisputably applies to 16 of the 19 Jones Day Memoranda, the District Court held that the privilege was waived because RPM supposedly "disclosed the contents of the interview memoranda to Ernst & Young[.]"

---

[7]     *See also*, *e.g.*, 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (3d ed. 2019) (work product "does not protect facts concerning creation of work product or facts contained within work product"); Michael E. Wolfson, *Opinion Work Product—Solving the Dilemma of Compelled Disclosure*, 64 Neb. L. Rev. 248, 256–57 (1985) ("[While] an interview summary prepared by the lawyer [may be] protected from discovery as opinion work product, the basic facts provided by witness A, as long as they are relevant and not protected from disclosure by another evidentiary privilege, are discoverable.").

(Appendix H at 16; *see also* Appendix L at 1, 4.)  This is clear and highly prejudicial legal error.  Jones Day in no sense disclosed any privileged information to E&Y.

To have effected a waiver, at a minimum Jones Day must have disclosed the substance of privileged communications to E&Y.  But the record establishes that Jones Day did *not* disclose any attorney-client privileged information to E&Y, but merely a subset of non-privileged facts.  (Appendix E ¶ 7.)  Facts and privileged communications concerning facts are "entirely different thing[s]."  *Upjohn*, 449 U.S. at 395–96.  Disclosure of non-privileged factual information "can never" justify "the forced disclosure of additional privileged information," because "[i]t goes without saying that merely disclosing non-privileged communications with an attorney does not thereby waive privileged ones."  *Local No. 26,* 266 F.R.D. at 10 (internal quotation marks and citation omitted).[8]

The District Court erroneously found a waiver of attorney-client privilege by elevating E&Y's multiple-hearsay notes and memoranda summarizing the Jones Day briefings over the sworn declaration of the lead Jones Day partner "conducting and overseeing the internal investigation" (Appendix E ¶ 3), attesting that he did not "disclose to Ernst & Young any information . . . subject to the attorney-client privilege"

---

[8]     *See also, e.g., In re Grand Jury Subpoena*, 273 F. Supp. 3d 296, 302 (D. Mass. 2017) ("'[A]n attorney's disclosure of certain facts to third parties does not constitute a waiver of the attorney-client privilege, even if those facts were obtained from communications with the client."); *Jaffe*, 244 F.R.D. at 429 (production of "a strictly factual and non-privileged document" did not "waive the privilege as to all . . . materials").

(*id.* ¶ 7). *See Resolution Tr. Corp.* v. *Mass. Mut. Life Ins. Co.*, 200 F.R.D. 183, 195 (W.D.N.Y. 2001) (no privilege waiver where attorney denied having made statement reflected in affidavit relaying double-hearsay).

### D. The Court Erred When It Ordered Blanket Disclosure of the Jones Day Memoranda Without Analyzing the Proper Scope of the Waiver.

The District Court erroneously ordered blanket production of all 19 Jones Day Memoranda without analyzing the proper scope of waiver, as required by Federal Rule of Evidence 502 when considering a request to order production of information protected by the attorney-client privilege and the work product doctrine. *U.S. Airline Pilots Ass'n* v. *Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 31 (D.D.C. 2011). Under Rule 502, the scope of required disclosure upon finding a waiver depends on a careful analysis of "whether the disclosed and undisclosed information concern the same subject matter and whether they ought in fairness to be considered together." *Local No. 26*, 266 F.R.D. at 15–16. The District Court here did no such thing.

A voluntary waiver generally "results in a waiver only of the communication disclosed." *See* Fed. R. Evid. 502 advisory committee's note. Subject-matter waivers are reserved "for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Id.* Subject-matter waiver "as a matter of fairness" occurs only when "the privilege holder seeks to use the

disclosed material for advantage in the litigation," but "deny its adversary access to additional materials." *Airline Pilots Ass'n*, 274 F.R.D. at 32.

With respect to work product, "there is not now, and there has never been, the absolute subject-matter waiver that supposedly flows from the disclosure of work-product." *Local No. 26*, 266 F.R.D. at 16. Disclosure of work product materials generally results in a waiver limited to the documents actually disclosed, not other documents containing the same or similar information, much less all materials related to the same subject matter. *See In re United Mine Workers of Am. Emp. Benefits Plan Litig.*, 159 F.R.D. 307, 311–12 (D.D.C. 1994) (waiver limited to documents actually disclosed when disclosure is not for purpose "of obtaining a strategic or tactical advantage"). Jones Day did not disclose to E&Y any of the Jones Day Memoranda (which did not yet exist) and thus there is no legal basis to find a work product waiver in respect of the Jones Day Memoranda. The E&Y notes and memoranda themselves mentioned only fragments of information purportedly conveyed by a subset of the interviewees swept into the District Court's blanket disclosure order. (Appendix B, Exs. 7, 8, 9.)

RPM has never used Jones Day's interviews or the Memoranda "to gain a tactical advantage" in this litigation, *United Mine Workers*, 159 F.R.D. at 312, nor has it otherwise put them at issue. Indeed, RPM had never even seen the Jones Day Memoranda *until the SEC moved to compel their production*. The "absolute precondition" for waiver of work product—"the disclosure of work product" by RPM—is missing entirely. *Local No. 26*, 266 F.R.D. at 16. To the contrary, the SEC hopes that the Jones Day Memoranda will

be unhelpful to RPM, and to use them offensively to fill witness gaps that the SEC did not pursue in discovery. A complete subject-matter waiver would therefore "yield additional attorney work product that would provide" the SEC "with a substantial strategic windfall." *United Mine Workers*, 159 F.R.D. at 312. Under these circumstances, "the law does not mandate a subject-matter waiver and such a waiver is more likely to undermine the adversary system than to promote it." *Id.* It was therefore "contrary to law" for the District Court "to extend the waiver of attorney work product to encompass previously undisclosed documents related to the same subject matter." *Id.*

## III. THE DISTRICT COURT'S ERRONEOUS RULING JUSTIFIES MANDAMUS.

Because the February 12 Order requiring disclosure of the Jones Day Memoranda is erroneous, the Court must next decide whether that error justifies issuing a writ of mandamus. *KBR I*, 756 F.3d at 760 (citing 28 U.S.C. § 1651). An error is the kind that justifies mandamus if: (1) the petitioner must have "no other adequate means to attain the relief he desires," (2) the petitioner must show that his right to issuance of the writ is "clear and indisputable," and (3) the court, "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* (quoting *Cheney*, 542 U.S. at 380–81). Because RPM meets all three conditions, the Court should grant RPM's petition.

## A.    RPM Has No Other Adequate Means of Redress.

RPM has "no other adequate means to attain the relief" it seeks. *Cheney*, 542 U.S. at 380. This initial condition is often met "in cases where a petitioner claims that a district court erroneously ordered disclosure of attorney-client privileged documents." *KBR I*, 756 F.3d at 760–61. "That is because (i) an interlocutory appeal is not available in attorney-client privilege cases (absent district court certification) and (ii) appeal after final judgment will come too late because the privileged communications will already have been disclosed pursuant to the district court's order." *Id.* at 761. Here, RPM did what the *KBR I* court contemplated, unsuccessfully asking the District Court to certify its production order for interlocutory appeal. (Appendix J.) While RPM could choose to "defy the district court's ruling and appeal if the district court imposes contempt sanctions for non-disclosure," this Court has consistently explained that "forcing a party to go into contempt is *not* an 'adequate' means of relief in these circumstances." *KBR I*, 756 F.3d at 761 (emphasis added) (citing *In re Sealed Case*, 151 F.3d 1059, 1064–65 (D.C. Cir. 1998)).

Nor is appeal after final judgment an "adequate" means of relief, as it would "come too late because the privileged materials will already have been released." *Id.* At that point, "the cat is out of the bag." *Id.* (citation omitted). As this Court and other circuits have explained, "post-release review of a ruling that documents are unprivileged is often inadequate to vindicate a privilege the very purpose of which is to prevent the release of those confidential documents." *Id.*; *see also In re Sims*, 534 F.3d 117, 129 (2d

Cir. 2008) ("[A] remedy after final judgment cannot unsay the confidential information that has been revealed.") (citation omitted). Contempt is likewise not an "adequate" means of relief because a civil contempt order is typically considered interlocutory and not appealable under 28 U.S.C. § 1291, and thus the "uncertainty" of whether defying a discovery order will result in a civil or criminal contempt order "bespeaks" the "inadequacy" of this avenue to relief. *In re Sealed Case*, 151 F.3d at 1064–65; *see also KBR I*, 756 F.3d at 761 ("[F]orcing a party to go into contempt is not an 'adequate' means of relief in these circumstances.") (citation omitted).

The Supreme Court has "repeatedly and expressly reaffirmed" that mandamus remains a "useful safety valve" in cases of "clear error" to correct "some of the more consequential attorney-client privilege rulings." *KBR I*, 756 F.3d at 761 (citing *Mohawk*, 558 U.S. at 110–12). It is the only safety valve left to correct the District Court's erroneous rulings here.

## B.     RPM's Right to Issuance of the Writ is Clear and Indisputable.

The petition satisfies the second condition for mandamus because RPM has shown that its right to the issuance of the writ is "clear and indisputable." *Cheney*, 542 U.S. at 381. As explained in Section II, the District Court's rulings each represent "not merely error, but 'clear and indisputable' error" because their outcomes would "erode the confidentiality of an internal investigation in a manner squarely contrary to the Supreme Court's guidance in *Upjohn*," and this Court's *KBR* decisions. *KBR II*, 796 F.3d at 150 (citing *Upjohn*, 449 U.S. at 393 and *KBR I*, 756 F.3d at 763).

### C. The Writ is Appropriate Under the Circumstances.

RPM has also demonstrated that the "the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. "As its phrasing suggests, that is a relatively broad and amorphous totality of the circumstances consideration." *KBR I*, 756 F.3d at 762. Here, as in the *KBR* cases, the District Court's order would generate "substantial uncertainty about the scope of attorney-client privilege in the business setting," and would have "potentially far-reaching consequences" that "threaten to vastly diminish the attorney-client privilege" in that setting. *Id.* at 756, 762. Its novel (and incorrect) approach "would disable *most public companies* from undertaking confidential internal investigations" where litigation is anticipated, which would represent a "sea change in the well-settled rules governing internal corporate investigations." *Id.* at 762.

Public policy considerations raised by the District Court's order also make review appropriate. Internal investigations are frequently motivated by multiple purposes. For example, attorneys may investigate a company's accounting practices to give comfort to management, identify areas for improvement, *and* prepare the company to defend against litigation—particularly where the SEC had already begun investigating.

But under the District Court's reasoning, interview memoranda prepared during an investigation may not be protected work product if the memoranda are generated to facilitate an audit and not solely prepared in anticipation of litigation. (Appendix H at 5.) That standard is too demanding, *Deloitte LLP*, 610 F.3d at 138, and, by eroding the protections provided by the attorney-client privilege and work product doctrine, would

29

discourage companies from undertaking effective investigations in response to regulatory inquiries. *See KBR I*, 756 F.3d at 757 (*Upjohn* confirms protections afforded by attorney-client privilege and work product doctrine to corporations to conduct internal investigations under the guidance of counsel to "gather facts and ensure compliance with the law after being informed of potential misconduct"). This is true despite the February 12 Order being a single district court ruling, because "prudent counsel monitor court decisions closely and adapt to their practices in response." *Id.* at 762–63. This Court should grant mandamus to correct the District Court's clear errors before the SEC's discovery tactics are employed by others "undermining the privilege." *Id.* at 763 (citing *In re Sims*, 534 F.3d at 129); *see also KBR II*, 796 F.3d at 151 (vacating decision that will "ring alarm bells in corporate general counsel offices throughout the country about what kinds of descriptions of investigatory and disclosure practices could be used by an adversary to defeat all claims of privilege and protection of an internal investigation").

This and other courts of appeals have granted mandamus based upon similar considerations. *See, e.g., KBR I*, 756 F.3d at 763 (granting mandamus to "avoid the development of discovery practices or doctrine undermining the privilege" (citing *In re Sims*, 534 F.3d at 129)); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1367, 1376 (Fed. Cir. 2007) (en banc) (same)). The novelty of the District Court's clearly erroneous February 12 Order, "combined with its potentially broad and destabilizing effects in an important

area of law," demonstrates that granting the writ is "appropriate under the circumstances." *KBR I*, 756 F.3d at 763 (citing *Cheney*, 542 U.S. at 381).

## CONCLUSION

The Court should grant a writ of mandamus vacating the District Court's February 12, 2020 Order.

Dated:  Washington, DC
        March 12, 2020

Respectfully submitted,

/s/  Mitchell G. Blair
Mitchell G. Blair
Fritz E. Berckmueller
David T. Bules
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816

/s/  Judson O. Littleton
Sharon L. Nelles
Stephen Ehrenberg
William H. Wagener
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Judson O. Littleton
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, DC 20006-5215
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

*Attorneys for Petitioner RPM International Inc.*

*Attorneys for Petitioner RPM International Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This motion complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this motion contains 7,745 words, excluding parts of the motion exempted by Fed. R. App. P. 32(f).

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Garamond font.

/s/  Judson O. Littleton
Judson O. Littleton
SULLIVAN & CROMWELL LLP

March 12, 2020

# CERTIFICATE OF SERVICE

I hereby certify that, on March 12, 2020, a copy of the foregoing Petition for a Writ of Mandamus was served via Federal Express and electronic mail upon the following:

Christopher Mark Bruckmann
(bruckmannc@sec.gov)
Sarah Heaton Concannon
(concannons@sec.gov)
Timothy K. Halloran
(hallorant@sec.gov)
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC 20549

*Counsel for Respondent*
*Securities and Exchange Commission*

Darren A. LaVerne
(dlaverne@kramerlevin.com)
Marjorie E. Sheldon
(msheldon@kramerlevin.com)
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036

Danny C. Onorato
(donorato@schertlerlaw.com)
Joseph A. Gonzalez
(jgonzalez@schertlerlaw.com)
SCHERTLER & ONORATO LLP
1101 Pennsylvania Avenue NW, Suite
1150
Washington, DC 20004

*Counsel for Respondent Edward W. Moore*

/s/ Judson O. Littleton
Judson O. Littleton
SULLIVAN & CROMWELL LLP